Brenton Aiken-Hance for Appellant Regelio Reyes from the Law Office of Jerry Steering. I would like to reserve three minutes for rebuttal, if that's okay? Yeah, we'll try to help you. Keep your eye on the clock. Thank you, Honors. So this case really boils down to one question. Do people forfeit their Fourth Amendment privacy interests in their homes merely by opening their doors in response to a knock? If the Supreme Court's ruling in Payton is to have any meaning, the answer must be no. So as Santana recognized, the threshold of the home, there is already a definition for it. It's not one step forward or one step backward from the from the doorway. So it's a straight line. The Supreme Court in Payton also clarified that it's bounded by the unambiguous dimensions of the home. Now that language you would think would be clear enough to offer guidance to police officers in the field. But, you know, these sort of things keep happening. And you know, we have to, this court really needs to put its foot down and let police officers know that the threshold doesn't extend as far as they can see into the home. It doesn't, it's not, you know, the, you know, within the swing of the doorway, the threshold is the doorway. And that's why this court really should address that constitutional question as the validity of Van Eenen. Now, let me ask you that. I mean, you've obviously got some new cases. We've got Ardenas, we've got London, we've got others that seem to be at variance. And yet, I'm at least from my part, I look at any age in which has never been overruled by our circuit. And I asked myself whether Miller versus GAMI permits us to be irreconcilable with Van Eeten. And I'm struggling with that. Can you help me? Well, my understanding is that if that Ardenas, if you really look at it, it does undercut the reasoning of... But is it irreconcilable? I realize there's tension. But is it irreconcilable with Van Eeten? I would argue yes, it's irreconcilable. Because if you accept what Van Eeten says, and you take away all the facts that you could possibly distinguish it, and you address that issue straight on, Van Eeten would dictate a different result than Ardenas would. And in that respect, it would be irreconcilable. If we, if I disagree, I'm just saying this arguendo. If Van Eeten is not irreconcilable with Ardenas and London, don't we have a situation where the law is not clear, and qualified immunity carries the day here? What's your thought about that? I would concede that if this court were to decide that the issue hinges on Van Eeten, and that it must confront the issue of Van Eeten, and that Van Eeten is no longer good law, I would concede that that law would not be clearly established for purposes of qualified immunity. Now, that's not to say that there could be no liability in this case, because there is still the state law false arrest claim, the issue of the state law immunities. But I would concede that, yes. If this court decides that the facts are distinguishable, for example, because a pellant was actually inside his house, and there's some precedent for that in this circuit. The Kwebs case, that person, he also was, he also opened the door in response to a knock. He was within, clearly within reaching distance of the pellant in that case, was within, he was inside his home. And that's the same issue here. So you don't need to necessarily, if you could plausibly decide that you don't need to reach the issue of whether Van Eeten is good or bad, because my client was inside his home, I understand that. However, if you decide that you must reach it, and that Van Eeten does dictate this result, then yes, I would concede that we would probably be at a situation there where the law wouldn't be clearly established, at least for purposes of this case. Going forward, I would hope it would be clearly established. So you're suggesting that we take the first prong of Pearson, find that Van Eeten is wrong, and go from there. And yet, under Ninth Circuit law, do we have the right, absent a Miller v. Gammon application, to, as a pre-judge panel, effectively overrule Van Eeten? You do, to the extent they're irreconcilable. Now, this definition of irreconcilable, which I believe that's what you're asking about, that if you can, if you look at the facts of both cases, and you decide that they're not materially distinguishable, and there are some facts that I could argue that are distinguishable, you might disagree with me. And if you do, if you do, if you believe that all the material facts are the same, and that Van Eeten dictates a different result than Hardinas would, you know, as using the reasoning that they, this court reached, used in London, if you have that situation, that would be a situation where it's irreconcilable. So if all the, if the material facts are not irreconcilable case. What about the Johnson case? How does that fit in there? Well, in Johnson, we have this issue of whether the person voluntarily opened the door. Now, this, it's been suggested by appellees that merely identifying yourself as a police officer is enough to render it a voluntarily opening the facts, relative to Van Eeten or to, that bring it within Johnson. So, for example, it's late at night, when they're knocking on the door, they're not just knocking, they're pounding on the door. Our, my client knows that they are armed, and we have an admission from appellees that they were going to go in one way or the other. And that's, so he was, his fears were well founded in that respect. They're, you know, they, he didn't really have a choice. Mr. Hans, I have a question for you. You said that, that they, that your client knew they were armed, but there was just a peephole. And so how do you assert that he knew they were armed? This is based on, based on his prior experience with, with law enforcement and that, that is an assumption to a certain extent. But I would submit that the general public is aware that officers, by and large, are armed when they're in the field. Well, but is that what that case stands for then? That just because they have a weapon and it's holstered, for example? Oh, no, no. And I would not, I would not make that argument. I would not argue that just because all officers are armed, or somebody makes that assumption, that it renders opening the door involuntary. But that fact in conjunction with others. So for example, because it was late, it was an unreasonable hour, an hour where most people would be sleeping. And the fact that when they're knocking, they're knocking aggressively and loudly. And the fact that he also has his wife and his child there. Those are facts that in conjunction with the fact that the police are armed, that he can, he can infer that he doesn't have a choice. At least there's at least a tribal issue of fact as to whether this alleged consent to open the door is voluntary. And if it's not voluntary, that brings it, that brings this case within Johnson. So, and that's one way, if you, if you are so inclined, that you could distinguish this case from Van Eten. So I have a follow up because I, I have a question about whether you feel the district judge ruled on the gunpoint excessive force claim. Yes. So, as he did, did he render a ruling on that issue? He, he did not, it appears. Uh, as, as to whether the pointing of the gun in and of itself is, uh, is excessive force. I don't believe he did. I believe he rendered his ruling based off of the, uh, based off of the handcuffing alone. But the fact is, pointing a gun at a compliant, unarmed suspect who doesn't pose an immediate threat without exigent circumstances. In this circuit, there are a number of cases that establish that that can be the basis for an excessive force claim. Now, this is in addition to the handcuffing issue. Normally, this, this circuit has treated that issue as a fact issue. So, when the court gets into this inquiry about, well, you know, did you seek medical care? How bad did it hurt? You know, how bad was the bruising? The court is really wading into factual issues when it starts to decide cases on that basis. And this court has ruled on a number of occasions, number of published cases that excessively tight handcuffing can be the basis for an excessive force claim. And to that extent, that is, that is something that the court should not have decided, should have treated that as a fact issue. Well, assuming that he did rule on the excessive force using the handcuffs, but he didn't rule on the excessive force gunpoint claim, do you, what do you think? Is there anything that should be done about that? Do you think it's dispositive of both claims by his ruling on the handcuff issue? I, I, I tend to treat it, I had treated the excessive force claims as the same. So, the excessive for the, for the gunpointing and the handcuffing because of, you know, just sort of the, the, the transactional nature, the transitory nature, nature of the incident. But I suppose you could treat, treat them separately. But we, we had alleged them as, as a single claim. And I've been treating them as a single claim, at least for those purposes here. But, but I do, I do believe that based on the facts in the record, based on the arguments that have been made, you could, there, there is enough, there are enough facts in the record to submit an excessive force claim to the jury based on the facts of this case. And counsel, I take, counsel, I, I take it you're saying that because the district court did not fully evaluate your excessive force claim, because as you mentioned, there are kind of two aspects to it. There's the handcuffing claim and there's the pointing gun claim. That the, because the district court did not fully explain or analyze the entirety of your claim, you're asking for a second shot before the district court on that. I, I believe we had briefed that issue. I, I, I believe we had briefed that issue and that's one reason why I would, why I would bring it up here. As far as the, the pointing of the gun. Yeah. If the court didn't reach it, I, I would, I would appreciate if the court would reach the arguments that we make, but unfortunately sometimes they don't. It is my understanding that we did make that argument and that's why we're bringing it up here. And what I want to, I guess what I want to clarify is that your argument is that there are, it's an excessive force claim and there are two aspects to the excessive force claim. And that if the district court did not analyze both aspects of it, that was error by the district court. And that to under, to fully appreciate your client's point, you have to look at everything that happened to him. Yes, I would. I would. Yes. Okay. Yes. Now, I know you want to save some time for rebuttal. I do. When, when we have that, would you, we'll, we'll let you take that time. We'll stop the clock now, but I want to ask you about Monell. So be prepared to talk about that. Okay. Yes, sir. Very well. Okay. Let's hear from the attorney for the city of Santa Ana that uh, men's pally, I believe. Thank you. Good morning, your honors. Uh, I want to start with the issue of Van Eaton. Uh, Van Eaton is still good law. Uh, Van Eaton created what, um, this court is referred to as the voluntary exposure exception to, uh, this Peyton Brightline rule. And the facts of this case demonstrate that the officers complied with Van Eaton. You don't find a case, we believe that's more on a point with Van Eaton than the facts of this case. And, um, we appreciate the, uh, appellant's position, which is that, well, Van Eaton doesn't really comply with Peyton and their position is that Van Eaton doesn't comply with Santa Ana. But, uh, this court distinguished, uh, Peyton based on Santa Ana and, and the, uh, the fact of that, the, uh, defendant in Van Eaton had, uh, had voluntarily exposed himself to the public, making the arrest lawful. That's exactly what happened in the case before this court. And while, um, uh, appellants would like this court to, to consider whether or not, uh, Van Eaton is still good law. And, you know, that's within this court's wisdom. The fact remains that it is good law. And because it's good law and because the officers complied with Van Eaton when they arrested the appellant in this case, the arrest should be considered lawful. Uh, if, let me ask you this, let's, let's assume you're right about Van Eaton or however you want to say it. Um, and let's just say that it's not irreconcilable with Hardina's and, uh, and, uh, London and others. What do we do with Johnson? Now here, here's the situation where, uh, the defendant, uh, defendant, the plaintiff in this case, um, saw the guns or I believe thought there were guns there, thought he had to open the door to be told to do that. And then at least from what I could see, it looked like an officer reached through the threshold and pulled him out. What do we make of that under the Johnson case? Well, I believe that Johnson is distinguishable on a number of grounds. Number one, in Johnson, they, uh, used a subtribute. They led the, uh, defendant to believe that they weren't officers. And, uh, Johnson, um, they, and unlike Johnson, they did not, in this case, the officers didn't announce themselves. They didn't tell the, when they knocked on the door, they didn't tell the appellant it was the police. Furthermore, when the appellant looked through the peephole, he did see officers, but he did not see their weapons drawn. The notion that he thought they were armed is merely his assumption that, well, they're officers, they're wearing uniforms, they must be armed. If you take that assumption as evidence that he saw that they were armed, that's a, we believe that's an unreasonable assumption. Every person knows that if an officer is wearing a uniform, he has more than likely a gun in his holster. You can't. So basically, the fact that he could assume that the police had firearms, but didn't see them, there's no deception involved, and it was his choice to open the door a crack, not because he was deceived into doing so, right? That's correct. That's correct. And, um, I think it's also significant that this is not a case where there was a persistence in knocking by the police. They knocked twice. If, uh, if you look at the body worn camera, they didn't bang on the door. They knocked twice. They, each time they knocked, they rang the doorbell. And in, uh, as a matter of fact, in the district court decision in London, the court noted that the fact that the officers in that case only knocked twice, indicated that they weren't being persistent. And in this case, the officers knocked twice. The defendant, the appellant, opened the door. When he opened the door is when they told him to put his hands up. At that point, he was exposing himself to the public, and under Van Eten, they had a lawful right to arrest him at that time. Let me ask you about the Monell claim. Um, as you well know, uh, many years ago, uh, I think it was Judge Fragerson wrote, Lee versus City of Los Angeles, which said that, and I'm quoting now, even if the claim is based on nothing more than a bare allegation that the individual officer's conduct conformed to official police custom or practice, that's all you need for Monell, according to that case. Uh, in this case, you've got, uh, in the deposition, uh, the officer Carrillo said that, uh, you know, basically it's confirmed. That's what they do. That's what you do in San Juan. Uh, how do we deal with this? The district court dismissed the Monell claim. Uh, wasn't a bare Monell claim made out under Lee based upon the allegations of what the officer said in the deposition? Thank you, Your Honor. We don't believe that a Monell claim was made, um, in this case, because if you look at the only allegation in the complaint that purports to be a Monell claim, it's nothing more than, um, a canned allegation that basically throws in every potential constitutional violation that might occur in any case. They don't, it's not specific as to the They basically take a canned allegation, and their entire Monell claim is based on that. And we don't believe... Doesn't Lee v. City of Los Angeles suggest that's sufficient? Uh, we don't believe it is. We believe that there has to at least be some connection, some allegation to the facts in this case that would suggest that there's a pattern in practice. And for, for the appellants to, to try to use subsequently discovered evidence to relate back to, uh, a vague allegation, we don't believe that there's any legal support for that. Moreover, in this particular case, what they're relying on is, uh, deposition testimony relating to the events that took place prior to the officers arriving at the to those facts and the facts that gave rise to this particular claim. For that reason, we think even if you were to look at that deposition testimony, it doesn't establish a pattern in practice of what the officers did in this case, which the appellants claim give rise to a constitutional violation. Ms. Tully, didn't, didn't the appellant ask for leave to amend so that he could actually tie it more into his case? After, after the discovery, didn't he ask for leave to amend? He asked for leave to amend long after the matter had been dismissed. He asked for leave to amend in connection with the motion for summary judgment. Uh, in that motion for summary judgment, this matter had not even been briefed by either party. It was a last minute request in oral argument for an opportunity to amend the Monell claim. The Monell claim was not at issue in the motion for summary judgment. We don't believe the matter was, uh, was properly raised before the district court at that time. Can you base that on what? On the fact that, that the, the motion for summary judgment didn't address the Monell claims. The Monell claim had already been dismissed and the motion for summary judgment that was brought by the appellees only addressed the remaining issues in the complaint. The Monell claim request was made at the end of oral argument long after the, and all of the other issues had been briefed. I'd like to address if I could, um, the excessive force claim, um, and just invite the court's attention to the body of work, um, camera footage. A review of that footage indicates that this was, um, unequivocally a consented, uh, a voluntary consent. Um, it was nonchalant. He, the, the response when he was asked to, um, for consent was as, as consensual as one might give. Um, moreover, if you look at that body worn camera footage, you will see he even tells the officers, I want to, I want to cooperate in this investigation. But counsel, let me ask you this. I, I agree with you that the video, the officers on the video when the consent, I would agree they acted professionally. I don't, I don't disagree with that at all. But I think what counsel is arguing is that pointing of the guns at him and then the handcuffs being too tight, that those are inherently factual questions and that, uh, those should be resolved by a jury. And also there are some state law claims that may have some similar issues there. So putting the consent aside as, but just focus for a moment on the excessive force, which is the gun pointing and the handcuffs being too tight. Why should you prevail at this stage of litigation on those claims? Let me take, thank you, your honor. Let me take the gun pointing piece of that first. Um, the plaintiff in his deposition when asked clearly stated that his excessive force claim was based solely on the handcuffs. Therefore, we believe there is no claim for excessive force based on the pointing of the gun. We don't believe that that claim can be manufactured through the briefing of the issue simply based on the fact that there are cases in this, uh, district which have held that pointing the gun could be considered excessive force. This plaintiff has not claimed that his excessive force claim is even based on the guns. Uh, and with respect to the handcuffing, the body worn camera footage does show that he did not complain about the tightness of the handcuffs until he was in the patrol car or being removed from the patrol car and asked that the handcuffs be loosened. As soon as he was asked, as soon as he asked the officers to loosen the handcuffs, the handcuffs were loosened. In fact, the only complaint he has is the soreness, the after effects that even the plaintiff, the appellant acknowledges is the kind of pain, the kind of soreness that one would expect after being handcuffed. That's not unreasonable. It's not excessive. Handcuffs are not intended to be comfortable. They're intended to secure a defendant. In this case, that's what they did. And when we acknowledged that they were too tight, we loosened them. We think as a matter of law, there is not a genuine issue of fact as to whether or not there was excessive force in this case. Um, I'd like to also address, I've addressed the, uh, the, the search. Um, I misspoke. I meant, uh, the unconstitutional search when I was speaking about the, uh, appellant's consent. He did consent to the, this search. I think the body worn camera is clear on that. With respect to the trespass under PC, um, Penal Code Section 847B1, I'd like to address that just briefly. Um, because the law is, is established that if qualified immunity exists, then under Penal Code Section 847B1, the officers can be found to have, uh, reasonably believed that their arrest was lawful. That is established in, in both California court, uh, courts and in this circuit. If the court looks at the O'Toole case, in the O'Toole case, the court said that the analysis under, uh, PC 847B1 parallels the immunity analysis. And it's important to note that that immunity analysis that the under state law, that's 8, uh, Government Code Section 820.6. That's a qualified immunity analysis. So in essence, what the court was saying was, you look at the same kind of analysis for purposes of 847B1. The O'Toole case relied on this court's decision in Galvin. And in that case, the court specifically held that because the district court had concluded the immunity existed, the federal officers in that case were not liable for a trespass under PC 847B1. So we believe the district court correctly concluded that because it had determined that qualified immunity existed, that the officers also were not guilty of a trespass by virtue of, uh, Penal Code Section 847B1. You've got about 40 seconds left. Anything else you'd like to add? Uh, thank you, Your Honor. No, I just want to conclude again by saying that we believe that this case is an all fours of Van Eten, that even if somehow Van Eten officers are entitled to qualified immunity, because at a minimum, the law is unsettled in this area. And because of that, there should be no liability for the Fourth Amendment under an unreasonable seizure. And for all those reasons, we respectfully request that the court uphold the decision of the district court in this matter. I appreciate your time. Thank you, counsel. Mr. Hands, you have a little rebuttal time. You want to tell us about why a Monell claim was properly made? Sure. Uh, so the what we're appealing here is the court's order dismissing it with prejudice. Now, just accepting the court's finding that the allegations were insufficient. If you accept that, it should have still given us leave to amend. And what we And there is the Supreme Court has also flatly stated there is no heightened pleading standard standard for Monell claims. So if you just if you look at just the facts that have come out at this point, it clearly was not impossible to fix that claim, assuming it was even deficient. And so, therefore, it would be error to dismiss that thing. And this is your opposing counsel said, if I understood it correctly, that, um, by the time the request for leave to amend on the Monell claim was made that the district court had dismissed the Monell claim in an earlier part of the proceeding, not as part of the summary judgment. Is that correct? From your perspective? Yeah, we had requested leave to demand for to amend at the pleading stage as well. We renewed that request and during the motion for summary judgment stage. And so there were effectively two requests made. So you asked for a leave to amend at the time that the judge dismissed the Monell claim, right? But we don't have. We have no occasion to immediately appeal that ruling. So this is right. And, um, the you say, from your perspective, the Supreme Court make sure that there is no heightened pleading standard on Monell, right? The Leatherman case makes that clear. It's been suggested at various times that plaintiffs must, you know, allege more specific facts when you're going against a municipality. Supreme Court has rejected that. And so it's the same pleading of standard applies to Monell claims. I'd like to just quickly point out that with regard to the coercion argument that council made under Jones, sorry, Johnson, this argument that subterfuge is the big difference maker here, I think it's, um, it leads to absurd results. It would lead to, for example, it would lead to the conclusion that somebody falsely representing that their pizza delivery man is more coercive than officers showing up late at night with pounding on your door, uh, and and trying to open the door, you know, jiggling the lock and things like that. It would. Nobody would argue that a pizza delivery person falsely representing themselves. The police pizza delivery person is more coercive than the behaviors of the officers in this case. Yet that is appears to be what counsel is arguing. I see my my time is right here. Your time is up. Let me ask my colleagues. Do either have any additional questions for Mr Hand? I do have one quick question. Thank you, Judge Smith. Council opposing counsel said that during the deposition of your client, your client said that is excessive force claim was just a handcuffing. Uh, I want to give you a chance to respond to that. Uh, so if the if the client is is answering a question that has some sort of the conclusion is it's effectively a legal conclusion that he that he's that she's asking for is your only excessive force claim based on the handcuffing. Well, he's not an attorney. He might be aware of all the facts of the case. But as far as what constitutes an actual an actionable claim, if that's what she's is, you know, it's it's a legal conclusion. So that would be that would be my response to that. So you say it's not binding on him in a sense of what you're what you're saying. Yeah, you can't. You can't take his his answer, which is effectively a legal argument. If she if she if she's asking him, well, it's pointing a gun at you. Excessive force. Excessive force. Term of art. That's not something a lay person is qualified to give an opinion on. So that would be my response to that suggestion. Thank you. Thank you. Other questions by my colleague. All right. We thank both Mr Hands and his colleague for their argument. The case just argued is submitted, and the court stands in recess for the day. Thank you. Thank you, Your Honor.
judges: M. Smith, Owens, Cardone